(101 So. 740)

WILSON et al. v. HORTON. (3 Div. 651.)

(Supreme Court of Alabama. Oct. 23, 1924.)

1. **Appeal and error** ⬅️695(1)—**Fact findings on evidence in record considered, though evidence on issues not presented or immaterial matters is omitted.**

Where record or clerk's certificate shows evidence omitted bearing on fact issue to be reviewed, or nature of omitted evidence does not appear, Supreme Court cannot review lower court's fact findings, though based on evidence taken by deposition, error not being presumed; but if omitted evidence relates solely to issues not presented on appeal, or immaterial matters, and all evidence on issue for review is before court, such rule does not apply.

2. **Appeal and error** ⬅️695(1)—**Omission of certain deeds from record on appeal from decree foreclosing mortgage held immaterial.**

That lost deeds, offered as part of chain of title of deceased mortgagor, through whom both parties claimed, and possibly bearing on original indebtedness entering into mortgages subsequently merged or renewed in deceased's wife's mortgage, were omitted from record on appeal from foreclosure decree, in suit to cancel mortgage as fully paid, *held* immaterial.

3. **Appeal and error** ⬅️907(4)—**Existence of lost mortgage, omitted from record, presumed, as material to issue.**

Lost mortgage, executed by plaintiff's husband to defendant year before plaintiff's execution of mortgage deed, sought to be canceled as fully paid, and merged therein with all prior debts, *held* material on issue as to husband's ability to pay, in determining which, in absence of such mortgage from record, existence thereof will be presumed.

4. **Appeal asd error** ⬅️543 — **Substitution of lost documents not for clerk.**

Clerk's duty is only to safely keep original documents filed in his office and copy them into record, and their substitution, if lost, is judicial function on proper hearing.

5. **Appeal and error** ⬅️655(1)—**Anything not properly made part of record should be ignored or stricken ex mero motu.**

Anything in record, not made part thereof in manner fixed by law, should be ignored or stricken ex mero motu.

6. **Appeal and error** ⬅️713(1) — **Lost documents, inserted in record, without agreement or substitution in due course, treated as if not copied therein.**

Lost deeds and mortgages inserted in record, without agreement or substitution in reg-

ular course, must be treated as if not copied therein.

**7. Appeal and error ⬥⟾671(3) — Appellants held not deprived of right to review by omission of certain lost documents from record.**

Omission from record, on appeal from foreclosure decree, of lost deeds in chain of title not in issue, mortgages merged in later transactions and not involved on appeal, and mortgages given after alleged payment in full of mortgage foreclosed, and bearing only on financial ability of mortgagors to aid in payment of debt secured, *held* not such defect as to deprive appellants of right of review on merits.

**8. Appeal and error ⬥⟾882(3)—Effect of parties' inconsistent attitudes on their contentions held immaterial except as to good faith.**

Whether grantee's contention that wife's deed sought to be declared mortgage, and canceled as fully paid, was absolute deed, made at husband's suggestion, and that voluntary promises were subsequently made to him and his sons after his death, to allow repurchase within three years, and grantor's contention that there was contemporaneous agreement to permit redemption by certain date, were weakened by former's denial of any right of redemption, and latter's effort to defeat entire debt on ground of coverture, *held* immaterial, on appeal from foreclosure decree, except as shedding light on parties' good faith.

**9. Mortgages ⬥⟾319(3) — Purported receipts and other evidence held not to show payment of mortgage debt.**

Purported receipts for entire indebtedness, and amounts of notes secured by mortgage sought to be canceled as having been paid in full, and other evidence, *held* not to show payment of mortgage debt.

**10. Mortgages ⬥⟾581(1)—Award of attorney's fees, provided for by prior mortgage in suit to declare absolute deed mortgage, and cancel it, held not error.**

While no attorney's fees are allowable on foreclosure of absolute deed intended as mortgage, court did not err in awarding attorney's fees provided for by prior mortgage, necessarily brought forward and sought to be foreclosed in suit to declare such deed a mortgage, and cancel it as illegal or fully paid.

Appeal from Circuit Court, Conecuh County; John D. Leigh, Judge.

Bill in equity by Mrs. S. S. Wilson against W. K. Horton, and cross-bill by Horton against the complainant and others. From the decree complainant and cross-respondents appeal. Affirmed.

Thigpen, Murphy & Jones, of Andalusia, for appellants.

The evidence omitted from the record not being material, such omission will not prevent a review of the case on appeal. Fleming v. Copeland, 210 Ala. 389, 98 So. 129. Counsel argue other questions, but without citing additional authorities.

Hamilton & Jones, of Evergreen, for appellee.

The record does not contain all the evidence, and the finding of the chancellor will not be disturbed. Jefferson v. Sadler, 155 Ala. 537, 46 So. 969; Wood v. Wood, 119 Ala. 183, 24 So. 841; A. T. & N. v. Aliceville L. Co., 199 Ala. 391, 74 So. 441. Any state of evidence will be presumed to sustain the finding. Elliott v. Round Mountain Co., 108 Ala. 640, 18 So. 689; Beard v. Du Bose, 175 Ala. 411, 57 So. 703, 63 So. 318; Sou. Mut. Ins. Co. v. Holcombe's Adm'r, 35 Ala. 327; Lamar v. King, 168 Ala. 285, 53 So. 279.

BOULDIN, J. The bill is filed to declare a deed to real estate to be a mortgage, and to cancel same on two alternate grounds: (1) It was given upon the lands of the wife to secure the husband's debt, and made an absolute deed as a means of evading the statute forbidding the wife to become the surety of the husband. (2) The mortgage debt is fully paid. The bill also prays alternate relief, by way of redemption, in case cancellation is denied.

The answer denies the equity of the bill on all these grounds; denies that the lands were owned by the wife; avers that, if deeded to her by her husband, as alleged, the respondent had no notice of her unrecorded deed at the time of taking the deed now assailed; and avers the deed to respondent was given in payment and satisfaction of the husband's debt without right of redemption.

The answer alleges further that respondent's deed was given in payment or as security for accumulated debt, secured by mortgages on the same lands antedating and superior to the deed from husband to wife; that these mortgages were never surrendered nor canceled, and are unsatisfied other than by the execution of the deed attacked by complainant. The answer is made a cross-bill, to foreclose the mortgage, if the deed is so declared, and brings forward the prior mortgages praying that all be foreclosed for the collection of the debt of the cross-complainant. J. E. Wilson, the debtor husband, having died, his heirs at law are made parties respondent to the cross-bill with S. S. Wilson, the complainant in the original bill.

On final hearing the court decreed respondent's deed to be a mortgage, and complainant entitled to relief by redemption. The court further decreed that the mortgage debt was wholly unpaid, and foreclosed the mortgage liens of cross-complainant for debt and attorney's fees. This appeal is by cross-respondents to review the foreclosure decree.

[1] The real question here presented in argument is one of fact on the issue of payment, vel non, of the mortgage debt. Appellee first suggests this question cannot be reviewed because of omission of certain testi-

mony from the record. The rule in this regard is: Where the record or the certificate of the clerk shows evidence omitted bearing upon the issue of fact we are called upon to review, or the nature of the omitted evidence does not appear, this court cannot review the findings of fact in the court below. While this court is directed by statute to indulge no presumption in favor of findings on evidence taken by deposition, we cannot presume error. It follows that we must have the evidence on which the court below acted, or we cannot disturb his finding.

If, however, it affirmatively appears the omitted evidence related solely to issues not presented on appeal, and this court has all the evidence bearing on the questions we are called upon to review, the above rule does not apply. Parties are invited by agreement to abridge the record as far as may be without prejudice to a right of review. For like reasons, we would not deny relief here because, for any reason, immaterial matters are omitted. Fleming v. Copeland, 210 Ala. 389, 98 So. 128; Wood v. Wood, 119 Ala. 183, 24 So. 841; Jefferson v. Sadler, 155 Ala. 537, 46 So. 969.

[2] The items of evidence omitted from the present record are certain original deeds and mortgages made exhibits to depositions, and certified to be lost. Exhibits 26 and 27 to testimony of respondent W. K. Horton are deeds offered as part of the chain of title of J. E. Wilson, the deceased mortgagor. Both parties claim through him. These deeds may also bear upon the original indebtedness, entering into mortgages antedating the wife's deed, and finally merged or renewed in the mortgage in suit. This issue was found for respondent. The validity and priority of his debt is not now in question. We consider this omission not material.

[3] Exhibit No. 30 is shown to have been a mortgage from J. E. Wilson to W. K. Horton in 1911, the year before the real estate mortgage deed was executed, with a contemporaneous bill of sale to sawmill, grist mill, gin, etc., for a separate debt. As we understand the testimony, all prior debts were merged in these later papers. However, one important issue is the general financial condition of Mr. Wilson as evidenced in part by the series of mortgages through the years, and continuing to the year of his death. We must consider this lost mortgage an item of evidence on this general issue of ability to pay as claimed by appellants. In passing upon that question, we indulge the presumption that such a mortgage existed.

[4] It further appears that numerous other deeds and mortgages were lost. The clerk certifies a list of them, and has made a part of the transcript copies taken by him from the records of deeds and mortgages in office of the judge of probate. This, no doubt, is a bona fide effort to make a full record and certify all the facts to this court. The clerk has only the duty to safely keep original documents filed in his office, and copy them into the record. If lost, their substitution is a judicial function on proper hearing. Here, the clerk certifies the record contains true copies of these documents as taken from the office of a recording officer. There was no motion for certiorari to complete the record, and no motion to strike this portion of the transcript. Objection is made thereto in brief for appellee.

[5-7] We think it best to adhere to one uniform rule, viz.: To ignore or strike, ex mero motu, anything in the record not made a part thereof in the manner fixed by law. Any other rule would lead to uncertainty, delay, and maybe injustice. These deeds and mortgages, inserted without agreement, and without a substitution in regular course, must be treated as if not copied in the record. The nature of these papers is shown in the record proper. Two are deeds, a part of the chain of title, not now in issue. Two are real estate mortgages, admittedly merged in later transactions, and not involved in this appeal. The others are mortgages from the sons of J. E. Wilson to W. K. Horton. They are shown to have been given after the father's death, and one and two years after the alleged payment in full of the mortgage involved. It sufficiently appears they do not relate to the same debt. The only light they shed on the issue here is the financial ability of the sons to aid in payment of the debt as claimed, and possibly some later transactions with these sons.

The real nature and probative effect of these lost and omitted documents being so shown in course of the proceedings, that this court can pass upon the issue presented on appeal without injustice to appellee, their omission will not deprive the appellants of the right of review on the merits of the cause.

[8] We have given careful consideration to the whole evidence on the issue of fact presented. A full review of this testimony would serve no good purpose, and unduly prolong this opinion. We merely outline some tendencies of the evidence which influence our finding: J. E. Wilson became indebted to W. K. Horton as early as 1905. This indebtedness, increased by loans to buy lands and otherwise, was combined and renewed in a mortgage of lands and chattels of date February 12, 1908. The mortgage debt then aggregated $3,495.51 and was evidenced by five promissory notes in unequal amounts, payable annually on November 1, 1908, to November 1, 1912, respectively. This debt and other dealings continued until July 25, 1912, when matters were again closed by executing the deed here involved reciting a consideration of $3,500, and a bill of sale for a sawmill, gristmill, gin, etc., at $1,250.

Complainant contends there was a con-

temporaneous agreement that the land mortgage could be redeemed upon payment of $3,648.32 on or before July 25, 1915. Respondent contends it was an absolute deed made at the suggestion of J. E. Wilson, and thereafter, a voluntary promise was made Wilson to allow a repurchase within three years, which promise was again extended to his sons after his death. There is some force in the argument that the moral position of respondent is weakened in the cause by his denial of any right of redemption, and his effort to explain subsequent events in keeping with that theory. It may be also said complainant's position is weakened by the effort in pleading and proof to defeat the entire debt on the ground of coverture. Neither of these issues is now important, except as it sheds light on the good faith of the parties.

[9] The cross-respondents claim the entire land mortgage, $3,648.32, was paid off within a year from July 25, 1912. In support of this, six alleged receipts executed by cross-complainant, W. K. Horton, are in evidence, and, with numerous other original papers, are sent up for our inspection. Five of these receipts purport to be given respectively for the exact amount of each of the notes secured by the mortgage of 1908, and each bears the date of maturity of the note, except the last, which is dated November 15, 1912, instead of November 1. The court below held these receipts to be forgeries. The entire record negatives the idea that these receipts were given on the dates they bear, or that the debt was paid as they purport to show. No one claims to have been present at their execution; they are accounted for as being found among the papers of J. E. Wilson after his death, which occurred in April, 1914. The suggestion is made that they may have been given at one time after these several notes were satisfied or renewed in the mortgage of 1912, in order to give Mr. Wilson a showing against papers not surrendered. If, indulging all presumptions against fraud, we accept that view, they may as well have been given on the settlement of July 25, 1912, as at a later date, and be no evidence of payments thereafter. We need not go into a discussion of the appearance of these alleged receipts, the signature, the uniform misspelling of "morgage" for "mortgage," the evidence of erasures, or different appearance of the written-out numbers from the other portions of the receipts. Under the evidence as a whole, we find no evidence in these five alleged receipts of the payment of this debt. The sixth receipt relied upon purports to show payment of the entire debt, $3,648.32, July 25, 1913. The court below held this paper not genuine because of alterations, converting another writing signed by W. K. Horton into an alleged receipt.

Not placing undue reliance on identification of handwritings, an examination of this paper, in connection with all the evidence, convinces us the court below was correct. The possession of means by Mr. Wilson and his sons to make this payment is not adequately shown. The habit of giving mortgages from year to year prior to the settlement of 1912 was followed with a chattel mortgage of J. E. and H. J. Wilson on crops, mules, and wagon for $450, May 1, 1913, less than three months before this alleged payment of this debt of thousands.

The proceeds of sale of the gin, and the sawmill, and mill site are presumed to have been applied to the debt they secured. Some evidence that respondent stated, in connection with the sale of the mill, that the balance was $425, and a duebill given for $75 balance due Mrs. Wilson on account of her lands included in the mill site, is best reconciled with the idea that they were dealing with the separate indebtedness covering the mill. This is further indicated by the admitted fact that, when one of the sons presented the duebill, respondent reminded him that the land debt of some $4,000 was still unpaid. To hold that the $425 balance still due in 1916 referred to the land debt is wholly at variance with the idea that the entire debt had been paid and evidenced by receipt known to the parties in 1913. A consistent finding demands that we accept the view that the whole debt was paid by July 1, 1913, as complainant claims, or it has never been paid. The fact that the papers were left in the hands of respondent during the many months of failing health of Mr. Wilson, when it is claimed respondent had invited him to come and get them; that this continued for years after his death, during which it reasonably appears the sons arranged to have time of redemption extended, and sought to make division and redeem in parts; and many other facts convince us this debt was never paid.

[10] On the question of attorney's fees allowed in the decree, it is true that no attorney's fees would be allowable in the foreclosure of an absolute deed intended as a mortgage. In the nature of the case, the instrument carries no contract to pay expenses or fees for foreclosure. But the nature of the case presented by the original bill occasioned the bringing forward and asking foreclosure of the mortgage of 1908, which did provide for attorney's fees. It is on this mortgage the trial judge awarded attorney's fees, and in this he did not err.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.